**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CASE NO. 5:20-CV-98-JRW**

*Electronically Filed*

| | |
|---|---|
| YIDDLE MISTER BILL, INC.,<br>D/B/A CYNTHIA'S RISTORANTE,<br>A KENTUCKY CORPORATION<br><br>      PLAINTIFF.<br><br>v.<br><br>CINCINNATI INSURANCE COMPANY;<br>STEVEN J. STACK, MD, COMMISSIONER<br>OF PUBLIC HEALTH, DEPARTMENT OF<br>PUBLIC HEALTH, CABINET FOR<br>HEALTH & FAMILY SERVICES;<br>ERIC B. FRIEDLANDER, SECRETARY,<br>CABINET FOR HEALTH & FAMILY<br>SERVICES; KERRY B. HARVEY,<br>SECRETARY, PUBLIC PROTECTION<br>CABINET<br><br>      DEFENDANTS. | **MEMORANDUM IN SUPPORT OF**<br>**MOTION TO DISMISS PURSUANT TO**<br>**FED. R. CIV. PRO. 12(b)(6)**<br>**ON BEHALF OF DEFENDANT,**<br>**CINCINNATI INSURANCE COMPANY** |

## TABLE OF CONTENTS

I.    INTRODUCTION …………………………………………………………6

II.   FACTUAL BACKGROUND …………………………………………………..7

    a.  **Allegations of the Complaint** …………………………………………..7

    b.  **The Cabinet Order** ………………………………………………8

    c.  **The Plaintiff's Policy** …………………………………………..9

        i.   *The Policy's Direct Physical Loss Requirement* ………………………9

        ii.  *Additional Requirements for Coverage Under the Policy* ………………10

III.  LEGAL STANDARD ………………………………………………………11

IV.   ARGUMENT ……………………………………………………………...12

    a.  **There Is No Direct Physical Loss To Property And Accordingly, There Is No  Coverage** …………………………………………...12

        i.   *There Are No Facts To Show Plaintiff's Property Was Physically Altered; Thus There Is No Physical Loss* …………………..12

        ii.  *The Coronavirus Does Not Affect The Structural Integrity Of Property; It Can Be Removed By Cleaning* ……………………………...15

    b.  **There Is No Civil Authority Coverage** ……………………………………17

        i.   *There Is No Direct Physical Loss To Other Property* …………………17

        ii.  *The Requisite Prohibition Of Access Is Lacking* ……………………18

    c.  **The Lack Of A Virus Exclusion Is Irrelevant** …………………………………19

V.    CONCLUSION ………………………………………………………20

## **TABLE OF AUTHORITIES**

### **Cases**

*Am. Mining Ins. Co. v. Peters Farms, LLC,* 557 S.W.3d 293 (Ky. 2018) …………………….…19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………………………...11

*Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ……………………………………………11

*Bros, Inc. v. Liberty Mut. Fire Ins. Co*., 268 A.2d 611 (D.C. 1970) ………………………….18

*Cincinnati Ins. Co. v. Motorists Mut. Ins. Co*., 306 S.W.3d 69 (Ky. 2010) …………………….19

*City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38 (2d Cir. 2003) …………………...14

*Crestview Country Club, Inc. v. St. Paul Guard. Ins. Co.*,

      321 F.Supp. 2d 260 (D. Mass. 2004) ……………………………………………………14

*Goldstein v. Trumbull Ins. Co.*, 2016 WL 13547667(N.Y. Sup. Ct. 2016) …………………….18

*Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) …………………………….11

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008) ……………………………………16

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,

      2020 WL 886120 (D.S.C. Feb. 24, 2020) …………………………………………….…17

*Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*,

      82 S.W.3d 869 (Ky. 2002) ………………………………………………….10, 12, 20

*Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 (S.D. Fla. 2018) ………………………15

*Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio App. 2008) ……………...15

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,

      187 Cal. App. 4th 766 (2010) …………………………………………………12, 13, 14

*Ne. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,

      2014 WL 12480022 (N.D. Ga. 2014) …………………………………………………14

*N. Am. Acc. Ins. Co. v. White*, 80 S.W.2d 577 (Ky. 1935) ……………………………………12

*N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*,

      930 S.W.2d 829 (Tex. App. 1996) ……………………………………………………14

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*,

    400 F.3d 613 (8th Cir. 2005) ………………………………………………………13, 14

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp. 2d 280 (S.D.N.Y. 2005) ……………………..14

*Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of America*,

    2015 WL 13547667 (N.J. Super. Ct. 2016) …………………………………………………18

*Secura Ins. Co. v. Gray Const., Inc.*, 717 F.Supp. 2d 710 (W.D. Ky. 2010) ………………………...19

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,

    2010 WL 2696782 (M.D. Pa. 2010) …………………………………………………………...18

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*,

    1:20-cv-03311-VEC (S.D.N.Y.), ECF 24-1 …………………………………………………14, 15

*Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*,

    465 F.3d 834 (8th Cir. 2006) ………………………………………………..........12, 13

*Southern Hospitality, Inc. v. Zurich Am. Ins. Co.*,

    393 F.3d 1137 (10th Cir. 2004) …………………………………………………………...18

*S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,

    2008 WL 450012 (S.D. Tex. 2008) …………………………………………………………17

*Syufy Enterprises v. Home ins. Co. of Indiana*,

    1995 WL 129229 (N.D. Cal. 1995) …………………………………………………………18

*TMC Stores, Inc. v. Gray Const., Inc.*,

    2005 WL 1331700 (Minn. Ct. App. 2005) …………………………………………………18

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267 (5th Cir. 1990) …………………………14

*United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006) ……………………17

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,

    114 Cal. App. 4th 548 (2003), *as modified on denial of reh'g* (2004) ……………………14

*Whitaker v. Nationwide Mut. Fire Ins. Co.*,

    115 F.Supp. 2d 612 (E.D. Va. 1999) …………………………………………………………14

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008) …………………………...14

*Wolstein v. Yorkshire Ins. Co.*, 97 Wash. App. 201 (1999) …………………………………14

## **Other Authorities**

10A *Couch on Insurance*, § 148:46 ……………………………………………………………12

*https://www.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html*…………………16

*https://governor.ky.gov/attachments/20200316_Order_Restaurant-Closure.pdf* …………………8

Federal Rule of Civil Procedure 12 ……………………………………………………………passim

Federal Rule of  Civil Procedure 56……………………………………………………………16

## I.     INTRODUCTION

Yiddle Mister Bill, Inc. doing business as Cynthia's Ristorante ("Plaintiff") fails to state a claim upon which relief can be granted. Accordingly, The Cincinnati Insurance Company ("Cincinnati") moves to dismiss pursuant to Rule 12(b)(6). Based upon the allegations set forth in Plaintiff's Complaint for Declaratory Judgment (the "Complaint")[1] and the language of Cincinnati's policy at issue, Plaintiff is not entitled to relief. Cincinnati's insurance policy at issue provides for property insurance coverage. It is designed to indemnify the insured for loss or damage to property, such as in the case of a fire or a storm. The Coronavirus does not damage property – it is potentially harmful to people.

In its Complaint, Plaintiff asserts entitlement to the policy's Civil Authority coverage. But, because this coverage is part of a property insurance policy, it protects the insured only for income loss caused by direct physical loss or damage to property, not for economic loss caused by the government's or Plaintiff's efforts to protect the public from disease. Thus, the Civil Authority coverage does not apply in the absence of direct physical loss to property.[2]

The Civil Authority coverage has additional requirements that Plaintiff cannot meet. It requires an action of civil authority prohibiting access to the premises that is caused by a direct physical loss to property away from the premises.

Plaintiff's Complaint alleges no facts establishing direct physical loss to anybody's property. Rather, it asserts that the Coronavirus harms people. Moreover, the Complaint alleges no action of civil authority that was made as a result of a direct physical loss to property and which also prohibits access to Plaintiff's premises. For those reasons, and as more fully explained in this Memorandum, Plaintiff's Complaint should be dismissed, without leave to amend.

---

[1] A true and correct copy of the Complaint, including exhibits to it, with bates numbering added for the Court's ease of reference, is attached as Exhibit A to the declaration of Attorney Matthew P. Cook in support of this Motion.

[2] The Complaint does not specifically allege entitlement to the policy's Business Income and Extra Expense coverage. However, even if it did, there is no coverage because the Complaint alleges no facts establishing direct physical loss to any property caused by Covered Cause of Loss.

## II.  FACTUAL BACKGROUND

### a.  <u>Allegations of the Complaint</u>

The Complaint includes the following allegations:

- Plaintiff operates a restaurant in Paducah, Kentucky. (*See* Declaration of Matthew Cook, Exhibit A at page 2: Complaint at ¶ 3).

- Steven J. Stack, M.D., Commissioner of the Kentucky Department for Public Health; Eric Friedlander, Secretary of the Kentucky Cabinet for Health and Family Services; and Kerry B. Harvey, Secretary of the Kentucky Cabinet for Public Protection (collectively, the "Kentucky Defendants") issued a statewide order requiring Plaintiff to "cease all on-site consumption of food and beverage" (the "Cabinet Order"). (*See* Exhibit A at page 2: Complaint at ¶ 5; and Exhibit A at page 6: Complaint at ¶ 14).

- The Cabinet Order was entered by the Kentucky Defendants due to the presence of the virus in and around Paducah, Kentucky and elsewhere in the Commonwealth of Kentucky. (*See* Exhibit A at page 5: Complaint at ¶ 13).

- As a result of the Cabinet Order, Plaintiff sustained loss of business income and submitted a claim to Cincinnati requesting coverage for that loss. Cincinnati denied the claim. (*See* Exhibit A at pages 1-2: Complaint at ¶¶ 1-2).

- At the time of the denial, Cincinnati was aware that:
  - COVID-19 was an airborne virus that existed in the atmosphere and settled on surfaces throughout the United States and throughout the Commonwealth of Kentucky, and that it was capable of causing dangerous physical conditions, including death. (*See* Exhibit A at pages 4-5: Complaint at ¶ 10).
  - the Cabinet Order existed and was based upon substantial evidence of the widespread presence of the virus throughout Kentucky. (*See* Exhibit A at pages 4-5: Complaint at ¶ 10).

- o the virus constituted a dangerous physical condition and, in some cases, a deadly condition. (*See* Exhibit A at pages 4-5: Complaint at ¶ 10).

- o there was legal authority holding that property damage need not be visible, physical destruction of property. (*See* Exhibit A at pages 4-5: Complaint at ¶ 10).

- o the presence of the virus in the air and on surfaces may constitute property damage. (*See* Exhibit A at page 5: Complaint at ¶ 11).

- o the Policy contained no virus exclusion. (*See* Exhibit A at page 5: Complaint at ¶ 11).

- ▪ Plaintiff's loss of business income is covered under the Policy. (*See* Exhibit A at page 6: Complaint at ¶ 17).

**b.   The Cabinet Order**

The Cabinet Order was issued by the Kentucky Cabinet for Health and Family Services, Office of Legal Services on March 16, 2020. (The Cabinet Order is available at https://governor.ky.gov/attachments/20200316_Order_Restaurant-Closure.pdf and its true and correct copy is also available on pages 9-10 of Exhibit A.) The Cabinet Order provided that effective at 5:00 p.m. on March 16, 2020, onsite consumption of food, beverage, liquor, beer, and wine was not permitted. (*See* Exhibit A at page 9: the Cabinet Order at ¶¶ 1 and 3). However, restaurants were allowed to continue or even expand their business for carry-out, delivery, and drive-through services. (*See* Exhibit A at page 9: the Cabinet Order at ¶¶ 1 and 3).

The Cabinet Order did not prohibit restaurant employees or patrons from accessing the restaurant premises. To the contrary, the order recognized that they would be present at the premises, by instructing the restaurants to ensure that employees and patrons engage in appropriate social distancing while there. (*See* Exhibit A at page 9: the Cabinet Order at ¶ 4).

According to the Cabinet Order, its overriding goal was to minimize in-person interaction. This is the primary means of transmission of COVID-19. (*See* Exhibit A at page 9: the Cabinet Order at ¶ 5). The order provided that its immediate implementation was necessary as patrons of

restaurants gathered in large numbers, in close proximity to each other and in enclosed spaces. This was seen as endangering the health of the staff as well as the patrons. (*See* Exhibit A at page 9: the Cabinet Order at ¶ 5). Thus, the Cabinet Order intended to reduce and slow the spread of COVID-19, to ensure that persons and groups disperse separate from each other, and to promote and secure the safety and protection of the civilian population. (*See* Exhibit A at page 9: the Cabinet Order).

### c.    **The Plaintiff's Policy**

Cincinnati issued Policy No. EPP 007 57 84 to Plaintiff for the policy period from April 21, 2017 to April 21, 2020 ("the Policy"). (*See* Exhibit A at page 11: Common Policy Declarations).  The Policy insures Plaintiff's restaurant location. (*See* Exhibit A at page 15: Schedule of Locations).

For present purposes, the pertinent form of the Policy is form FM 101 04 04, called the Building and Personal Property Coverage Form. This form supplies the Business Income and Extra Expense Coverage, but only if the necessary elements for those coverages are satisfied. This form also contains the Civil Authority coverage at issue in the Complaint.

### i.    *The Policy's Direct Physical Loss Requirement*

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiff's. The requirement appears in multiple places. For example, direct physical loss to the Plaintiff's property is required for the Business Income coverage:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". **The "suspension" must be caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.** With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1000 feet of the site at which the "premises" are located.

(*See* Exhibit A at pages 43-44: FM 101 04 04 at pages 16-17 of 35) (emphasis added).

Also, a core requirement of the policy is that there be a Covered Cause of Loss. This is defined as all risks of direct physical loss unless the loss is excluded or limited. (*See* Exhibit A at

page 32: FM 101 04 04 at page 5 of 35). Accordingly, there is no Covered Cause of Loss, and therefore no coverage, unless the insured first establishes, among other things, that there is direct physical loss to covered property.[3]

Direct physical loss to property is also required for the Extra Expense coverage. "Extra Expense" means necessary expenses the insured incurs during the "period of restoration" that the insured would not have incurred if there had been no direct physical "loss" to property caused by or resulting from a Covered Cause of Loss. (*See* Exhibit A at page 61: FM 101 04 04 at page 34 of 35). Accordingly, a Covered Cause of Loss including direct physical loss, is an express requirement for coverage for the Extra Expense coverage. (*See* Exhibit A at page 61: FM 101 04 04 at page 34 of 35).

Similarly, direct physical loss to property is required for the Civil Authority coverage:

We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by action of civil authority that prohibits access to the "premises" **due to direct physical "loss" to property**, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

(*See* Exhibit A at page 44: FM 101 04 04 at page 17 of 35) (emphasis added). Accordingly, a Covered Cause of Loss and thus direct physical loss, is an express requirement for coverage for the Civil Authority coverage. (*See* Exhibit A at page 44: FM 101 04 04 at page 17 of 35).

### ii.  *Additional Requirements for Coverage Under the Policy*

In addition to the requirement of direct physical loss caused by a Covered Cause of Loss, the Civil Authority coverage requires an actual loss of Business Income that an insured sustains if the loss is caused by an action of a civil authority. The coverage is only provided if both of the following apply:

(a) There is an action of civil authority that prohibits access to the "premises"; and

---

[3] Furthermore, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is direct physical loss in the first instance. *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (explaining that the sole function of an exclusion "is to restrict and shape the coverage otherwise afforded.")

(b) The action of civil authority is due to direct physical "loss" to property, other than at the "premises".

(*See* Exhibit A at page 44: FM 101 04 04 at page 17 of 35). Accordingly, the Civil Authority coverage requires, among other things, direct physical loss to property other than the insured's property and prohibition of access to the insured's property as a result of that direct physical loss.

## III.   LEGAL STANDARD

The Complaint should be dismissed if Plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must construe the Complaint in the light most favorable to Plaintiff and accept all factual allegations as true, but the factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. The complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir.2014) (internal quotations omitted). Failure to include plausible factual allegations for all material elements necessary for recovery warrants dismissal. *Id.*

Legal conclusions and other unsupported conclusions may not be considered in determining a Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotations omitted). It is proper for the Court to consider the Policy attached to the Complaint. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) (holding that insurer's attachment of insurance policies to its 12(b)(6) motion did not require the Court to convert to a motion for summary judgment where policies were referred to throughout the complaint and were central to the insureds' claim).

## IV.     ARGUMENT

Parties to an insurance contract have the right to agree on the specific risks that the contract will cover and the courts will not rewrite the contract. *N. Am. Acc. Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002). Under Kentucky law, the burden is on the insured to establish coverage. *N. Am. Acc. Ins. Co.*, 80 S.W.2d at 578. Thus, if the insured is unable to meet its initial burden, the coverage analysis ends at that point.

### a.    There Is No Direct Physical Loss To Property And Accordingly There Is No Coverage.

### i.    *There Are No Facts To Show Plaintiff's Property Was Physically Altered; Thus There Is No Direct Physical Loss*

Cincinnati has found no case in Kentucky or elsewhere, holding that the mere presence of a virus constitutes direct physical loss. By contrast, numerous court decisions nationwide hold that direct physical loss requires actual, tangible, permanent, and physical alteration of property:

> The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A *Couch on Ins.* § 148:46; *see also Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (2010).

In *Source Food* the U.S. government imposed an embargo on the import of Canadian beef following the detection of Mad Cow Disease in some Canadian cattle. Despite there being no evidence that **its** beef was contaminated, Source Food could not import it into the U.S. because of the embargo. It claimed lost business income under its insurance policy. Like the policy here, Source Food's policy required direct physical loss to property. *Id.* at 835. Source Food argued

"that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id.* at 836. *Source Foods* rejects this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838.

To the same effect is *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co*., 400 F.3d 613 (8th Cir. 2005). *Pentair* rejects Pentair's contention that its Taiwanese suppliers' inability to function after a loss of power constituted direct physical loss or damage. *Id.* at 616. *Pentair* holds that loss of use or function could potentially be relevant to determining the amount of loss, but only after an insured first establishes direct physical loss or damage. *Id*. *Pentair* further states that "Pentair's argument, if adopted, would mean that direct physical loss or damage is established whenever property cannot be used for its intended purpose.") Thus, *Pentair* rejects this argument. *Id.*

*MRI Healthcare* is to the same effect. There, MRI Healthcare's landlord was required to repair the roof over the room where the MRI machine was located. The roof had been damaged by storms. *Id.* at 770. To make  these repairs, the MRI machine needed to be turned off or "ramped down." *Id.* After the machine was ramped down, it failed to ramp back up. *Id.* MRI Healthcare submitted claims for property damage and resulting loss of business income. *Id.*

*MRI Healthcare* holds that "detrimental economic impact unaccompanied by a **distinct, demonstrable, physical alteration of the property**" is widely held to be excluded in the policies requiring direct physical loss. *Id.* at 779 (internal quotations omitted) (emphasis added). "A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Id.* (internal quotations omitted). Since there was no physical change in the condition of the property, *MRI Healthcare* held that no direct physical loss had occurred.

*Source Food*, *Pentair*, and *MRI Healthcare* are not alone in holding that direct physical loss requires an actual, tangible, permanent and physical alteration of property. *See, e.g.*, *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556–57 (2003), *as modified on denial of reh'g* (Jan. 7, 2004) (holding that loss of electronically stored data, "with its consequent economic loss, but with no loss of or damage to tangible property" did not constitute direct physical loss); *Phila. Parking Auth. v. Fed. Ins. Co.,* 385 F.Supp. 2d 280, 289 (S.D.N.Y.2005) (finding no direct physical loss at airport parking facility that had to close following the September 11, 2001 terrorist attacks); *Crestview Country Club, Inc. v. St. Paul Guard. Ins. Co.*, 321 F.Supp. 2d 260, 264 (D. Mass. 2004) (holding that modification of a hole at a golf course did not constitute direct physical loss to the course because, "physical must be given its plain meaning – e.g., 'material.'"); *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2d Cir. 2003) (explaining that the requirement of direct physical loss "strongly implies that there was an initial satisfactory state that was changed ... into an unsatisfactory state"); *Ne. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *5 (N.D. Ga. May 23, 2014) (same); *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990) (same); *Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612, 616 (E.D. Va. 1999) (same); *Wolstein v. Yorkshire Ins. Co.*, 97 Wash. App. 201, 212–13 (1999) (same); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 833–34 (Tex. App. 1996) (same); *see also Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 15; *see also* Exhibit B at page 15.[4] *Social Life* denies a motion for preliminary injunction because the Coronavirus causes no direct physical loss. *Social Life* states that the virus damages lungs; not printing presses. *Id.* at 15; *see also* Exhibit B at page 15.

---

[4] No written opinion has been issued in *Social Life* at the time of filing this brief. A copy of the hearing transcript is available through the Federal Court's filing system, PACER. A file-stamped copy of the hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit B to the Cook Declaration. A court considering a motion to dismiss may take judicial notice of judicial opinions. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

Accordingly, "New York law is clear that this kind of business interruption needs some damage to the property[.]" *Id.* at p. 15.

Thus, it is manifest that the Coronavirus does not cause direct physical loss because it does not cause actual, tangible, permanent, and physical alteration of property. Moreover, even if it did, the Complaint here does not allege that the Coronavirus was present on or at the Plaintiff's premises.

### ii.   *The Coronavirus Does Not Affect the Structural Integrity of Property; It Can Be Removed by Cleaning*

Additionally, there is no direct physical loss in situations where a contaminant or substance can be cleaned. *See*, *e.g.*, *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143 (Ohio App. 2008); *Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp*., 703 F.Supp. 2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 Fed.Appx. 569 (6th Cir. 2012).

*Mastellone* in particular, is very close, factually, to the present case. The relevant policy language in *Mastellone* also required "direct physical loss," also referred to in *Mastellone* as physical injury to property. *Id.* at 1143-44. *Mastellone* holds that mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity. In this context, *Mastellone* rejected the argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." *Id.* at 1144. The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of the siding." *Id.* at 1143-45, *citing* 10A *Couch on Ins.* § 148:46 (3d Ed.1998).

In *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012), there was a claim for black mold contamination and cleaning in an office building. The building owner had to shut down the building's HVAC system and vacate the building. *Id.* at 570. Universal presented a claim for lost business income, moving expenses, lost rents, and cleaning expenses to

its property insurer, which denied the claim. *Id.* at 571. *Universal Image* rules these claims to be economic loss claims with no attendant direct physical loss or damage. *Id*. at 574. *Universal Image* states that "not a single piece of Universal's physical property was lost or damaged as a result of mold or bacterial contamination." *Id.* at 573. Thus*, Universal Image* holds that there was no direct physical loss. The black mold was cleaned and removed, without any property having been harmed. *Id.* at 574-75. Therefore, the mere presence of Coronavirus does not cause direct physical loss.

In the instant case, Plaintiff does not allege that the Coronavirus was present at its premises. The loss Plaintiff alleges is caused by the presence of the virus in our world, not by any physical damage or effect on Plaintiff's premises or someone else's property.  In any event, the Centers for Disease Control and Prevention (the "CDC") has instructed that the Coronavirus can be wiped off surfaces by cleaning: "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), https://www.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html (accessed June 24, 2020)).[5] Thus, as in *Mastellone* and *Universal Image Prods., Inc.*, even if there is actual presence of the Coronavirus, there is no direct physical loss because the virus either dies naturally in days, or it can be wiped away.

---

[5] Again, this Court may take judicial notice of the CDC reports and other matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

### b.     There Is No Civil Authority Coverage

As established, the Policy's Civil Authority coverage only applies if there is a direct physical "loss" to property, other than at the "premises", caused by or resulting from a Covered Cause of Loss. (*See* Exhibit A at page 44: FM 101 04 04 at page 17 of 35). Even then, there is only Civil Authority coverage if both of these additional requirements are met: (1) there is an action of civil authority that prohibits access to the "premises", and (2) the action of civil authority is due to direct physical "loss" to property, other than at the "premises".

### i. *There is No Direct Physical Loss to Other Property*

Cincinnati has demonstrated that direct physical loss to property other than the Plaintiff's premises is necessary. Courts nationwide have upheld that requirement. *See Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006).

Just as the Coronavirus is not causing direct physical loss to the Plaintiff's premises, it is not causing direct physical loss to other property. The Complaint fails to identify any direct physical loss, anywhere. Rather, the Complaint alleges loss of business income as a result of the Cabinet Order, which in turn was caused by the presence of the Coronavirus in Kentucky. (*See* Exhibit A at pages 1-2: Complaint at ¶¶ 1-2; and Exhibit A at page 5: Complaint at ¶ 13). No facts are alleged that demonstrate that these things happened because of direct physical loss to anybody's property. Instead, limiting of business operations protected the public from human to human transmission of the virus.

There are no alleged facts asserting any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

### ii. *The Requisite Prohibition of Access Is Lacking*

The Civil Authority coverage also requires that access to Plaintiff's premises be prohibited by an order of Civil Authority. But, the Cabinet Order does not prohibit access to Plaintiff's premises. Based on the lack of such a prohibition here, there is no Civil Authority coverage.

This position is established by law nationally. There is no Civil Authority coverage unless there is an order prohibiting access to the insured's premises. For example, in *Southern Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) (applying Oklahoma law), the plaintiff managed a number of hotels throughout the country. *S. Hosp., Inc.*, 393 F.3d at 1138. Its revenues and profits plummeted when the FAA grounded all flights in the United States following 9/11. *Id. Southern Hospitality* holds there is no civil authority coverage because the orders prohibited flights, not access to hotels. Likewise, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782, 4 (M.D. Pa. July 6, 2010), a bridge repair hindered or dissuaded the majority of customers from visiting a ski resort. *Ski Shawnee* holds that did not constitute prohibition of access to the premises. *See also*, *e.g.*, *Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, 2 (N.D. Cal. Mar. 21, 1995) (riot-related curfew prevented insured's customers from being out and about, it did not prohibit access to the insured's premises); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 614 (D.C. 1970) (same); *Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of America*, 2015 WL 13547667, 6 (N.J. Super. Ct. July 24, 2015) (despite serious traffic issues in lower Manhattan following Superstorm Sandy, it was not completely impossible for the public to access the insured store). *See also, Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, 12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, 4 (Minn. Ct. App. June 7, 2005).

Here, the Cabinet Order did not prohibit access to the Plaintiff's premises. To the contrary, it allowed access, subject to certain restrictions. Employees were allowed to access the premises to prepare food for carry-out, delivery, and drive-out services. Customers were allowed to access the premises to pick up the food. Delivery services were allowed to access the premises to collect the orders that they would then deliver to the customers. At no time was access prohibited. (*See*

Exhibit A at pages 9-10:  The Cabinet Order). In fact, recognizing that customers and employees would be present at the premises, the Cabinet Order instructed the restaurants to ensure that they engage in appropriate social distancing. (*See* Exhibit A at page 9: the Cabinet Order at ¶ 4).

Because the Complaint's allegations and Cabinet Order establish access was not prohibited, the Civil Authority coverage does not apply.

        **c.**      **The Lack Of A Virus Exclusion Is Irrelevant**

Plaintiff alleges that the Policy contains no virus exclusion. This is irrelevant. The sole function of an exclusion "is to restrict and shape the coverage otherwise afforded." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). As such, an exclusion can become relevant only if it is first determined that coverage is present. *Secura Ins. Co. v. Gray Const., Inc.*, 717 F. Supp. 2d 710, 715 (W.D. Ky. 2010), *modified on clarification* (July 12, 2010) (explaining that after insured establishes coverage, the burden shifts to the insurer to establish that an exclusion applies).

According to the Policy, Covered Cause of Loss means all risks of direct physical loss that are neither excluded nor limited. (*See* Exhibit A at page 32: FM 101 04 04 at page 5 of 35). Thus, the first step in determining whether a cause of loss is covered is identifying direct physical loss to property. If direct physical loss is established, the second step is to determine whether it is excluded or limited. If, however, there is no direct physical loss to property in the first place, the analysis stops at that point and the existence or absence of any exclusion is irrelevant. *See, e.g.*, *Am. Mining Ins. Co. v. Peters Farms*, LLC, 557 S.W.3d 293, 298 (Ky. 2018), *reh'g denied* (Nov. 1, 2018) (holding that a court need not consider the applicability of an exclusion if there is no initial grant of coverage under the insurance policy.); *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 78 n.35 (Ky. 2010), *as corrected* (July 19, 2011) (same).

To conclude, Plaintiff suffered no direct physical loss to property and its alleged damage is not covered under the Policy. When there is no coverage under the policy, the availability of a virus exclusion is irrelevant.

## V.    CONCLUSION

There is no possible coverage because the Coronavirus does not cause direct physical loss and Plaintiff does not and cannot allege otherwise. Accordingly, Plaintiff has not alleged a claim on which relief can be granted. Therefore, The Cincinnati Insurance Company respectfully requests that its Motion to Dismiss be granted, without leave to amend.

Respectfully submitted by:

KERRICK BACHERT PSC
1025 State Street
P.O. Box 9547
Bowling Green, KY 42101
Phone:  (270) 782-8160
Email:  tkerrick@kerricklaw.com
Email:  mcook@kerricklaw.com

*/s/  Matthew P. Cook*
Thomas N. Kerrick
Matthew P. Cook
*Counsel for Defendant, Cincinnati Insurance Company*

G. David Rubin  (Subject to pro hac vice admission)
Hayk Ghalumyan  (Subject to pro hac vice admission)
LITCHFIELD CAVO LLP
2 North Lake Avenue, Suite 400
Pasadena, CA 91101
Phone:  (626) 683-1101
Email:  rubin@litchfieldcavo.com
Email:  ghalumyan@litchfieldcavo.com
*Counsel for Defendant, Cincinnati Insurance Company*

## CERTIFICATE OF SERVICE

This will certify that this pleading was electronically filed using the Court's CM/ECF filing system on this the 26th day of June, 2020 and that a true and correct copy of same was forwarded by emailed on this date to the following:

Mark P. Bryant
Bryant Law Center
601 Washington Street
Paducah, KY 42003
Email:  mark.bryant@bryantpsc.com

Ronald R. Parry
Strauss Troy
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Email:  rrparry@strausstroy.com

Calvin Fayard
Fayard & Honeycutt
519 Florida Avenue SW
Denham Springs, LA 70726
Email:  calvinfayard@fayardlaw.com

Leah Cooper Boggs
Office of Legal Services
Kentucky Public Protection Cabinet
500 Mero Street, 218NC
Frankfort, KY 40601
Email:  lboggs@ky.gov

D. Brent Irvin
Kentucky Cabinet for Health & Family Services
Office of Legal Services
275 East Main Street, SW-B
Frankfort, KY 40671
Email:  brent.irvin@ky.gov

*/s/  Matthew P. Cook*
Thomas N. Kerrick
Matthew P. Cook
*Counsel for Defendant, Cincinnati Insurance Company*